When the board rendered its obviousness determination, it relied on the incorrect understanding that Melby's louvered film was designed to minimize ambient light. That is not the case, and Melby is quite clear on this point. Melby repeatedly identifies as the purpose of its louvered film the reduction of ghost images formed from a CRT computer screen or other backlit displays such as a car dashboard. The board repeatedly relied on this initial erroneous understanding throughout its opinion. For example, it found that Melby teaches a film that reduces the influence of ambient light and cited the other reference, Webster, the desire of Webster to avoid ambient light. Later, the board found that reducing excessive ambient light also happens to be one of the goals of Melby. But again, it is not one of Melby's goals. Later yet, the board found that Webster and Melby have a similar objective, and that objective is a reduction of optical interference in the form of excessive ambient light with a light-controlled film being placed over a light-sensitive detector. That finding is wrong for two reasons. First, the ambient light issue, and second, the fact that Webster, which deals with physiological monitoring systems, has a different type of problem than Melby, which deals with light emitters. So a computer screen or a car dashboard, the louvered film of Melby is placed on the emitting aspect, not a detecting aspect. The reason why this is a reversible error... That is absolutely true, Judge Laurie, but the board relied on tying the two references together through that ambient light finding. The justification for the obviousness determination had to do with the fact that both addressed the same problem, and that is what I just referred to, that the board found that Webster and Melby have a similar objective. So it was effectively a same-problem, KSR-type analysis, and that is at APPx33, where the board found that they acted in precisely the manner to achieve precisely the end contemplated by each of Webster and Melby. So the board was relying on a KSR-type argument that drew a parallel between the purposes of each of the references, when there is no support for the idea that they have the same purpose at all. And that is the reason why this is a reversible error on its own, is because without that tying together based upon the ambient light, the purpose of the sensor of the louvered film in Melby being to reduce ambient light, there is no reason an artisan would have looked to it. There is a second, I'm happy to address any of the court's questions on Melby. I'm just wondering, this is a question of fact, right, that Apple had an expert that explained that Melby did teach this, and the board relied on that. So at least that, right, we're dealing with a substantial evidence review, what's conclusions with respect to what the prior art taught. I believe, and we cite this in our briefing, I believe their expert relied on a slightly different and erroneous, I think Apple has disclaimed this. Apple's expert actually relied on the idea that you would substitute Melby's louvered film for a diffusing element, and that's not present in Webster. And Apple in their briefing has said that that was wrong, or an obvious error. I'll note that that obvious error also appears in the petition itself, and the board recognized that. So there's a little bit of tension here. The ambient light theory, I don't believe, came up necessarily in the expert declaration, specifically that Melby disclosed ambient light as a goal. Now I think what the expert did say is that after you form that combination, you would recognize that it would reduce ambient light. But that's a retrospective approach. So you don't look retrospectively after you've combined the two references together to form a sensor. You look prospectively as to whether there's a reason for making that combination in the first place. I think that's what was absent. Just to be clear, you don't dispute that Webster discloses the claimed sensor elements, right? We don't dispute that Webster discloses a sensor, and we also don't dispute that Webster discloses a film that filters wavelengths. What we do dispute with respect to the board's factual findings about Webster is that the board found that Webster broadly disclosed some type of light filter. We think that that finding is not supported by substantial evidence because, in fact, what Webster does is disclose only one kind of light filter. And it's not an example in Webster. It does disclose concerns on unwanted ambient light. We also acknowledge that Webster identifies ambient light as an issue. Webster addresses quite a bit of factors involving these sensors, right? Webster discloses at a high level a pulse oximetry sensor. But go back. It seems to me that the way I read it, you don't dispute that Webster claims the sensor elements. Webster discloses the claimed sensor elements. We don't dispute that Webster discloses an emitter, discloses a detector, but we do dispute that there would be any reason to add a louvered film. But it talks about the problem with ambient light also. Correct. It identifies a problem. And I don't think you dispute that Melby discloses the louvers. We do not dispute that Melby discloses the louvered structure. The solution. It is, but there is no identification that that would be a solution. The problem is that you don't get to just pick out any film and say, well, this is the solution. There may be many, many different solutions that in retrospect become clear. And that's what we're dealing with here. Because what Webster says in response to the ambient light issue, it's concerned with blocking light that comes from the side. And what they do is they recess the photo detector. For example, you can imagine you're standing at a window and you take some steps back from the window and you feel the view is narrowed. What it does not do, and this is very important because in pulse oximetry it's a very sensitive type of measurement. It doesn't block light coming in from the window itself. That's the difference. So the louvered film actually. But at that point, why wouldn't a person skilled in the art be able to figure this out just for practical practicality? Well, I will note that despite being found to be a comprehensive view of the field at the time, Webster doesn't mention louvers in any context has ever been used. That's why, as Judge Lori said a few minutes ago, we're not talking about anticipation, we're talking about obviousness. That's why we combine it with Melby. That's right. And again, what we want to point out here is that the reason for the combination was a misapprehension that the louvered structure of Melby was designed to reduce ambient light, and there is no such disclosure. Well, didn't the board conclude that it also teaches that film is useful in a wide variety of applications? Yes. And Melby about that, and so they concluded it was sufficient and under our standard of review. I'm not clear on how we could discard that. Whether or not it's useful in a wide variety of applications is different than whether the specific teaching that the board relied on for its obviousness combination, and that specific teaching is that the purpose of Melby's film was to reduce ambient light, and that's clearly not supported by substantial evidence. So it's not just that it could be used, it's that the board's analysis specifically relied on the fact that it was disclosed as being useful for reducing the impact of ambient light. So that is the type of factual finding where you do need substantial evidence support because under KSR, the obviousness determination, the strategy or the theory that was taken was that there was a commonality of purpose. And if that's not supported by substantial evidence, then the theory falls apart. Whether or not it could be used, and we don't have a, we haven't addressed the issue of whether ultimately, after the combination, it could have that function. But the bottom line is you have to make it first. You set the bar pretty low on patentability. Judge Loehr, respectfully, the Louvred film, to my understanding, it's an almost unique feature, and that's why they didn't cite any references. I think there's maybe one reference cited in the context of a different combination from many, many decades ago for a completely different purpose. But it wasn't something that was used. The idea of this patent, this particular patent, was using the directionality of light to give you additional information. And I think that was a new feature in the art. It sounds to me that you're arguing that Melby is not in the same analogous field as Webster. We're not raising an analogous argument. That's not the issue. You're not calling it that, but that's what it sounds like you're doing. You're arguing there's nothing that would take a person skilled in the art from Webster to Melby. That is what we're arguing, because in the context of these sensors, blocking light coming in from the measuring site, which is what a Louvred film does, it blocks what they call on-axis light. And the reduction is quite significant. It could be 20, 25 or more percent on-axis. That's because you put a physical barrier in the way of the light, even the light that you want. And that would be very undesirable in the context of these types of sensors. We can save the rest of your time. I will save the rest of my time for rebuttal. Thank you, Your Honor. May it please the Court, Lauren Degnan for Apple. Substantial evidence supports the Court's finding to combine Melby's Louvres with Webster's sensor. First, Webster's teaches repeatedly the desire to avoid unwanted light. Melby likewise teaches a solution to the problem of avoiding unwanted light in the form of these Louvres, this Louvred film. Webster goes further. Webster says that one should place some type of light filter over the detector as a way to avoid unwanted light. And then, of course, Melby teaches a type of light filter. To make the findings of a motivation to combine, the Board relied on Webster's teachings. That alone is substantial evidence, but the Board had more. It relied on Dr. Anthony's declaration, including in paragraphs 100 through 104, at appendix 657 through 60, who explains that one of ordinary skill in the art would have been motivated by these teachings in Webster's to take the Louvred film of Melby and apply it to Webster's sensor. My colleague talked a little bit about this idea of ambient light. Webster teaches on appendix 950 that a type of unwanted light is excessive ambient light. And that is the nature of the teachings in Webster's. The Board does say that Melby would help with that problem. I think, to be very candid, Melby doesn't use the phrase ambient light, but Melby is very clear about his desire to mitigate unwanted light. And it proposes a structure that has a wide variety of applications. Column 1 talks about goggles. The end of column 4 talks about a sunscreen. It's not simply the backlit. The sun comes through one direction for the sunscreen. The light comes up from the backlit. The structure of the Louvre is agnostic to the direction of the light. It functions in the same way, controlling the directionality of the light. I want to point out and respond to Council's argument that Webster's teaching to use some type of filter is not limited exclusively to a wavelength type filter. If we look at appendix 950, where Webster is teaching us about different types of unwanted light, Does Melby teach avoiding ambient light? Melby teaches avoiding unwanted light. It does not use the words ambient light. Most of your argument now has been on ambient light. So how would a person still in the yard at Webster know to go to Melby if ambient light is not the objective? So Webster teaches us that excessive ambient light is one kind of unwanted light. And Melby speaks to the desire to avoid off-axis light, unwanted light. And so, again, because it's an obvious conversation, Your Honor, one doesn't have to start with one reference and be directed to another. A person of ordinary skill in the art is already aware of both teachings, both references. I understand, but as you agree, Melby doesn't teach avoiding ambient light. Melby teaches avoiding unwanted light. But since ambient light is a type of unwanted light, the references are making the same sort of teachings. Can you say that perhaps the Board misapprehended ambient light for unwanted light, or vice versa? So I think in the part of the final written decision, the Board is talking about Webster's teachings about unwanted light and ambient light being a kind of unwanted light, and in the combination describing how using Melby's specific technique to avoid unwanted light would have the effect of ambient light. So the language may be a little loose, but the context was describing the operation of the combination. But the fact that Melby doesn't specifically speak to ambient light with respect to one of skill in the art who understands that ambient light is a type of unwanted light, which Melby is talking about, I think is more than substantial evidence. Again, we're looking to support the Board's finding that the teachings together result in the claimed combination. And so through the lens of substantial evidence, we have the teachings, both teachings with respect to unwanted light and Dr. Anthony's explanation of how one of Moria's skill in the art reading Webster and knowing of Melby would have been motivated to combine them. You want ambient light when you want to get vitamin D, but in certain circumstances it may be unwanted. That is exactly right. On appendix 950, the Webster reference explains that excessive ambient light is unwanted light. I will say for Webster, I want to make the point, Webster talks about the need to, this is appendix 950, the need to minimize the effect from light other than the obstacle signals of interest. It talks about the designer must attempt to limit the light reaching the photodiode to that which has traveled through tissue containing arterial blood. So he's focusing on making sure that the detector is obtaining light that has passed through the blood. And it talks about two different kinds of unwanted light. One is by wavelength and one is by direction. It specifically says one can decrease the angle of incidence to the photodiode. This concept of controlling the direction of the light to avoid unwanted light of a certain direction is specifically also mentioned in Melby with respect to the benefits of its louvers film. Again, this is in column 4, talking about light entering at a grazing angle would be a type of unwanted light. In addition to the broad teachings of that, some type of light filter can be used in order to obtain the benefits of avoiding unwanted light. Both references talk about this, teach this idea of a way it's useful to avoid unwanted light due to its directionality. And Dr. Anthony is following up on this point in paragraph 100 of his declaration is very clear that Melby teaches that one can restrict the direction of light using the louver filters. For those reasons, we would say that this record contains more than sufficient evidence from which the board made its findings of the motivation to combine Melby's louvers with Webster's sensor. Again, that would be Webster's teaching, Dr. Anthony's description, the references, and Melby's solution to the problem of unwanted light. And the court doesn't have further questions. I will yield now. Let me ask you an irrelevant question. You know a lot about U.S. patents. Why is this Melby rather than Cobb when Melby is the fourth listed inventor? Doesn't that seem unusual? I will confess I had the same question. I'm afraid I don't know, Your Honor. I think sometimes people pick a name in the petition and we're not always privy as to why Melby gets his day in the sunlight here as opposed to for Mr. Cobb. We'll consider it properly anyway. Thank you. Mr. Helm has some rebuttal time. Thank you, Your Honor, and I'll try to be short. The issue of equating ambient light in Melby and Webster first came up in the reply briefing before the board. It wasn't presented in the petition itself. It was at APPX 28 where the petitioner argued in the reply that Webster describes that one type of unwanted light that should be minimized is ambient light, which is the type of light the light control film of Melby is designed to minimize. So this was the express argument that was made before the board and that the board applied. It wasn't a generic idea of unwanted light. It was specifically equating the purpose of Melby and Webster. So that came up for the first time in reply. There was no reply declaration submitted in this proceeding, so it was unsupported by expert testimony. The issue of some type of light filter, we believe that, properly read, Webster does not disclose anything other than a wavelength filter. And that's because when it mentions some type of light filter, it immediately in the next sentence says, this is or this means you can filter wavelengths of light. So it's an IDS statement, not an EG statement. And finally, the discussion of ambient light in Webster comes in a completely different section than its discussion of films placed over the detector. And that's important because placing something over the detector has the possibility of impeding the light from the measurement site, the desired light. That's exactly what you would expect with a louvered film that would impede the light from the measurement site. The decrease in the angle of incidence has to do with recessing the photodetector back, as I discussed before, stepping back from the window as opposed to putting a structure over the window that would block the light. And if there's no further questions, I'm happy to sit down.